IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 2:24-CR-566-DCN |
| | ) | |
| v. | ) | MOTION FOR VARIANCE SENTENCE |
| | ) | |
| JEVON OTHA THOMAS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

NOW COMES the Defendant, Jevon Otha Thomas, in the above-captioned action, acting by and through undersigned counsel, hereby filing this motion for a downward variance sentence. For the following reasons, Mr. Thomas asserts that a probationary sentence is appropriate.

**I.**
**FACTUAL BACKGROUND**

Mr. Thomas has a background that likely looks all too familiar to this Court. His first run-in with the criminal justice system came at the age of eighteen, when he was convicted of unlawful carrying of a weapon. *See* Presentence Investigation Report ("PSR") ¶ 62. In 1998, at the age of twenty, he sustained his first significant prison sentence when he received a five-year sentence for armed robbery in Louisiana. *See* PSR ¶ 63. Then, in 2012, he received a twelve-year prison sentence for aggravated assault with a deadly weapon in Texas. *See* PSR ¶ 65. He was released to parole in August 2018.

The events in this case took place nearly seven years ago, in July and August 2019—approximately a year following Mr. Thomas' release from prison. As Mr. Thomas explained during his change of plea hearing, he was approached with a proposition to make some quick

money. He would open bank accounts, receive deposits, disburse those deposits, and receive a direct payment for his assistance. Those deposits were fraudulently obtained, and Mr. Thomas looked the other way—a decision he is deeply remorseful for making. All told, Mr. Thomas obtained $138,304.69 by two payments into his accounts and he disbursed $138,285.00, leaving only $19.69 between the two payments he received. *See* PSR ¶¶ 46-47; 50-51; 55.

In the years since Mr. Thomas' criminal activity took place, Mr. Thomas has exhibited exceptional behavior showing significant reformation from his prior criminal activities. He has been working continuously, both as a truck driver and as a boiler maker. *See* PSR ¶¶ 95-98. Notably, Mr. Thomas obtained his CDL license in December 2019, which is just a few months after his actions in this case. He is engaged to be married, and he is living with his fiancé in a stable residence. *See* PSR ¶ 86. He has a positive net monthly cash flow, *see* PSR ¶ 99, and he has been working hard to ensure he has a significant sum to contribute to his restitution following sentencing. He has only one criminal conviction for a reckless driving offense committed in 2025. *See* PSR ¶ 72a. Importantly, much of this reformation occurred while Mr. Thomas had no criminal charges pending. The government did not indict Mr. Thomas until July 2024, which was nearly five years after the criminal conduct in this case took place. *See* ECF No. 2 (Indictment).

## II.
### APPLICABLE LAW

There are numerous requirements set forth in 18 U.S.C. § 3553(a) that a sentencing court must consider in fashioning a sentence that is not greater than necessary to achieve the four goals of (1) retribution; (2) deterrence; (3) protection of the public; and (4) rehabilitation. These factors are:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed—

    (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)     to afford adequate deterrence to criminal conduct;

    (C)     to protect the public from further crimes of the defendant; and

    (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the advisory sentencing guidelines range;

(5)     any pertinent sentencing guidelines policy statements;

(6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

### III.
### DISCUSSION

A probationary sentence is appropriate. Mr. Thomas' evidence of post-offense rehabilitation is "highly relevant to several of the § 3553(a) factors." *Pepper v. United States*, 562 U.S. 476, 491 (2011). This is particularly true given that Mr. Thomas' rehabilitative efforts clearly demonstrate he decided "on his own initiative[] to change his life." *Gall v. United States*, 552 U.S. 38, 57 (2007). Unlike the typical case "where the offender's rehabilitation occurred

3

after he was charged with a crime," Mr. Thomas' rehabilitation is "genuine, as distinct from a transparent attempt to build a mitigation case." *Id.*

### A. The Nature and Circumstances of the Offense (§ 3553(a)(1))

The nature and circumstances of the offense are significant. Mr. Thomas obtained nearly $140,000.00 he was not entitled to receive. While he was not the email hacker, he nevertheless played an important role in the operation as someone needed to open accounts, receive the funds, and then disburse the funds. Moreover, the theft of the funds caused difficulty for at least one of the victims, who indicated it took eight months to get the money he was entitled to receive. *See* PSR ¶ 57. Mr. Thomas is fully committed to meeting his restitution obligations.

### B. The History and Characteristics of the Defendant (§ 3553(a)(1))

Mr. Thomas's turnaround is remarkable. As he states in his letter to the Court, *see* Attachment 2, Mr. Thomas has exhibited a profound change in the direction of his life over the course of the last several years. Prior to his actions in this case, Mr. Thomas had spent the better part of his adulthood incarcerated for very serious offenses.

That changed in 2019. As explained above, Mr. Thomas made the commitment to change himself for the better and to focus on his family. His family and friends tell the story far better than counsel can:

- Sanya Baines, friend: "Everyone is capable of making mistakes, but what stands out about Jevon Thomas is his ability to learn from those experiences and strive to make better choices moving forward. I have personally observed his efforts to improve himself and maintain a positive path." Attachment 1 at 2.

- Cynthia Thomas, friend: "Jevon has been someone I can depend on when I truly need support. After I had a fall and my phone was broken, he made sure I had a new one so I

could stay in contact and feel safe. He has also helped me financially when I needed it just to get by. Those are things I will never forget." Attachment 1 at 3.

- Ja'von Thomas, son: "During my life I have known Jevon to be reliable always ready to help me despite being hours away across state lines, responsible as I have been watching him working consistently on getting his life on trac[k], and trying to better himself." Attachment 1 at 4.

- Janiyah Thomas, daughter: "Since coming home, I have seen a major change in his behavior and mindset. He has been committed to staying on the right path and making better choices for himself and our family. He takes his responsibilities seriously and is focused on building a stable and productive life." Attachment 1 at 5.

- Quianna Jackson, sister: "As his sister, I have watched him grow, and I have seen the effort he has made to move forward and do better for himself. He takes responsibility seriously and has been working toward building stability in his life." Attachment 1 at 6.

- Sherike Kittles, foreman: "Mr. Thomas is a reliable, hardworking, and respectful individual who consistently shows up ready to work and contribute. He takes initiative on the job and often steps in to assist others without being asked. I have personally seen him guide coworkers, answer questions, and help keep work moving efficiently. Based on his performance and attitude, he is currently being considered for a promotion to a foreman position."

Mr. Thomas' life is now focused on his family and his friends. They provide him support, and he draws purpose and meaning from his positive relationships with them. Mr. Thomas has provided a sampling of photos with his family and friends which best reflect his involvement in

5

their lives. *See* Attachment 4. He is also working continuously to better himself, as evidenced by his numerous certificates of achievement and training. *See* Attachment 3.

Mr. Thomas' extensive evidence of rehabilitation impacts many of the § 3553(a)(2) factors. A probationary sentence is appropriate because the Court does not need to deter Mr. Thomas from further criminal conduct, *see* § 3553(a)(2)(B), as he has shown he will not commit further criminal conduct. Similarly, the Court does not need to incarcerate Mr. Thomas to protect the public from his further crimes, *see* § 3553(a)(2)(C), because he has demonstrated he will not commit any further crimes. Moreover, the vocational and educational training Mr. Thomas needs, *see* § 3553(a)(2)(D), will not be found behind prison walls. A sentence of incarceration, by contrast, would frustrate these ends. It would cause a significant setback in Mr. Thomas' employment, particularly as he is potentially going to be elevated to a foreman if he does not return to prison.

Consequently, Mr. Thomas submits a probationary sentence is warranted due to his extraordinary evidence of self-rehabilitation. Mr. Thomas worked for years to better himself, build bonds with his family, friends, and coworkers, and establish a solid foundation upon which he could build the rest of his life. He undertook that work for years for its own sake, and not because he had been caught and was hoping to avoid an eventual prison sentence. He remains committed to remaining on the right path. *See, e.g.*, *Gall*, 552 U.S. at 59 ("The District Court quite reasonably attached great weight to Gall's self-motivated rehabilitation, which was undertaken not at the direction of, or under supervision by, any court, but on his own initiative. This also lends strong support to the conclusion that imprisonment was not necessary to deter Gall from engaging in future criminal conduct or to protect the public from his future criminal acts.").

6

**C. The Kinds of Sentences Available, the Advisory Guidelines, and the Advisory Guidelines Range (§ 3553(a)(4)-(5))**

Mr. Thomas' sentencing range is 15-21 months' imprisonment, which is in Zone D of the sentencing table. *See* U.S.S.G. Ch. 5 Pt. A (Sentencing Table). The Sentencing Guidelines prohibit a probationary sentence for a defendant in either Zone C or Zone D of the sentencing table. *See* U.S.S.G. §§ 5C1.1(d); (f). Accordingly, under the sentencing range as presently calculated, Mr. Thomas requests this Court vary three levels to offense level 10, which is the first offense level in Zone B where a probationary sentence may be imposed.

Additionally, though, the United States Sentencing Commission recently promulgated new amendments to the Sentencing Guidelines. *See* United States Sentencing Commission, *Amendments to the Sentencing Guidelines (Preliminary)*, April 16, 2026 (available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202604_prelim-RF.pdf). Relevant here, the Sentencing Commission amended U.S.S.G. § 2B1.1's loss table and increased the threshold loss amount required to establish each tier of loss. Under the amended guideline, Mr. Thomas would receive only a six-level enhancement pursuant to § 2B1.1(b)(1), not an eight-level enhancement. Consequently, if Mr. Thomas was sentenced under the amended loss table, his sentencing range would be 10-16 months' imprisonment, and he would be in Zone C rather than Zone D. Mr. Thomas would require only a one-level variance from the amended guideline range to qualify for a probationary sentence in Zone B. *See*, *e.g.*, U.S.S.G. § 5B1.1(a)(2) (authorizing a sentence of probation for offenders in Zone B); § 5C1.1(d) (authorizing either a sentence of imprisonment or a sentence of imprisonment with substitute punishments for offenders in Zone C). The Sentencing Commission's recognition that Mr. Thomas' conduct is less serious than previously thought provides an additional reason to impose a sentence of probation.

7

**D. The Need to Avoid Unwarranted Sentencing Disparities (§ 3553(a)(6))**

The need to avoid unwarranted sentencing disparities supports a lesser sentence. Section 3553(a)(6) is focused on "eliminat[ing] unwarranted sentencing disparities nationwide." *United States v. Withers*, 100 F.3d 1142, 1149 (4th Cir. 1996). The JSIN data provided in the PSR demonstrates that three of the ten defendants who were similarly situated to Mr. Thomas did not receive a sentence of incarceration. *See* PSR ¶ 122 (noting that there were ten defendants in Mr. Thomas' cohort and that seven of the ten received a sentence of incarceration). Consequently, Mr. Thomas' request for a probationary sentence is in line with what other defendants have received nationwide.[1]

**E. The Need to Provide Restitution (§ 3553(a)(7))**

As stated above, Mr. Thomas is committed to providing restitution to his victims. The need for Mr. Thomas specifically to provide restitution is particularly important as no one else was charged as a result of the government's investigation in this case. A probationary sentence furthers this end, as Mr. Thomas will maintain his employment and will be readily able to make payments towards his restitution. Conversely, a sentence of incarceration will hinder his ability to make restitution as his employment will necessarily end while he is incarcerated. Accordingly, Mr. Thomas submits consideration of § 3553(a)(7) supports his request for a probationary sentence as well.

---

[1] There is insufficient data for offenders with an offense level of 11 and a criminal history of II, which is what would apply if the new amendments were in effect at the time of sentencing.

## IV.
## CONCLUSION

For the reasons stated, Mr. Thomas respectfully requests this Court impose a sentence of probation.

Respectfully submitted,

s/ Jeremy A. Thompson
Jeremy A. Thompson (#10342)
Assistant Federal Public Defender
Office of the Federal Public Defender
1901 Assembly Street, Suite 200
Columbia, SC  29201
803-765-5077
Jeremy_Thompson@fd.org
ATTORNEY FOR THE DEFENDANT

This 8th day of May, 2026.